FILED

2023 Jan-17 AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JULIE TAPIA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:22-cv-01081-MHH** |
| | } | |
| **DR. MUHAMED et al.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Julie Tapia filed her *pro se* complaint in this action on August 26, 2022.  (Doc. 1).  With it, she filed a motion to proceed without prepayment of a filing fee.  (Doc. 2).  In that motion, Ms. Tapia asked the Court to appoint an attorney to represent her.  (Doc. 2).[1]

Initially, Ms. Tapia's case was randomly assigned to a magistrate judge.  (Doc. 3).  The magistrate judge granted Ms. Tapia's motion to proceed without prepayment of a filing fee and denied Ms. Tapia's motion for appointment of counsel.  (Doc. 5, pp. 2-3).  By statute, when the magistrate judge granted Ms. Tapia's motion to proceed without prepayment of a filing fee, the magistrate judge had to review Ms.

---

[1] Shortly after she filed her initial complaint, Ms. Tapia amended her complaint to correct the year of the incident about which she complains.  (Doc. 4).

Tapia's complaint to determine whether Ms. Tapia adequately alleged claims against the defendants she named. (Doc. 5, p. 3, citing and explaining 28 U.S.C. § 1915(e)(2)(B)).[2] Because federal courts are courts of limited jurisdiction, the magistrate judge also had to review Ms. Tapia's complaint to determine whether federal jurisdiction exists. (Doc. 5, p. 4); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Based on her review of Ms. Tapia's initial complaint, the magistrate judge, in an order to show cause, instructed Ms. Tapia to explain why the Court should not dismiss the complaint for lack of subject matter jurisdiction. (Doc. 5, pp. 4-6).

---

[2] The magistrate judge explained:

> When a plaintiff is granted *in forma pauperis* status, a court is required to review the plaintiff's complaint and dismiss it *sua sponte* if it is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B). "A claim is frivolous if it is without arguable merit either in law or fact." *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010). Likewise, the Eleventh Circuit has affirmed the dismissal of claims as frivolous where federal subject matter was lacking. *See Linge v. State of Ga., Inc.*, 569 Fed. Appx. 895, 896 (11th Cir. 2014).

(Doc. 5, pp. 3-4) (footnote omitted). The *Linge* decision rests on an application of the *Rooker-Feldman* doctrine, a jurisdictional principle.

Ms. Tapia responded to the show cause order.  (Doc. 6).[3]  The magistrate judge found that Ms. Tapia did not identify a basis for federal jurisdiction in her response to the show cause order, so the magistrate judge asked the Clerk of Court to reassign Ms. Tapia's case to a district court judge to consider whether Ms. Tapia's claims may proceed.  (Doc. 7).  After the Clerk of Court randomly reassigned Ms. Tapia's case to the undersigned judicial officer, (Doc. 8), Ms. Tapia supplemented her response to the show cause order, and she filed an amended complaint.  (Docs. 9, 11).  Ms. Tapia also filed several notices.  (Docs. 10, 12, 13, 14, 15, 16, 17, 18, 19).

Because Ms. Tapia is proceeding *pro se*, to determine whether Ms. Tapia has alleged viable claims and a basis for federal jurisdiction, the Court considers Ms. Tapia's initial and amended complaints together.  The Court also considers the information Ms. Tapia provided in her responses to the magistrate judge's show cause order and in the notices that she submitted.[4]

---

[3] In her response to the show cause order, Ms. Tapia stated:  "I do not wish to have a lawyer at this time."  (Doc. 6, p. 1).

[4] Ordinarily, "[o]nce an amended complaint is filed, the original pleadings are considered 'abandoned' and are 'no longer a part of [the plaintiff's] averments.'"  *TVPX ARS, Inc. v. Annuity Ins. Co.*, 959 F.3d 1318, 1327 (11th Cir. 2020) (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).  But when a plaintiff proceeds *pro se*, a district court often will read the plaintiff's initial and amended complaints and supplemental filings together to give the plaintiff the benefit of all information presented to the court.  *See Aufderhaar v. Warder*, No. 8:21-CV-419-MSS-CPT, 2021 WL 7448081, at *3 (M.D. Fla. Nov. 3, 2021), *report and recommendation adopted*, No. 8:21-CV-419-MSS-CPT, 2021 WL 7448085 (M.D. Fla. Nov. 30, 2021); *Roth v. Farmingdale Union Free Sch. Dist.*, 2019 WL 3281126, at *1 n. 2 (E.D.N.Y. July 19, 2019) ("All facts are taken from the complaint, amended complaint, and attached exhibits.... Courts ordinarily

Reading Ms. Tapia's submissions together, she has asserted claims against Children's Hospital, Cahaba Medical Care, and Drs. Muhammed, Duckworth, Franks, and Ahalt. (Doc. 1).[5] Ms. Tapia alleges that she took her 13-year-old daughter to an appointment at Cahaba Medical Care on October 21, 2020. (Doc. 1, p. 13; Doc. 4; Doc. 15, pp. 2, 4).[6] Ms. Tapia asserts that when someone at the medical facility asked her daughter if she (her daughter) was suicidal, her daughter answered "no" but indicated that she had been suicidal two years earlier. (Doc. 1, p. 13; Doc. 15, p. 2).[7] Ms. Tapia alleges that someone at the medical facility blocked she and her daughter from leaving and called the police. Ms. Tapia alleges that she did not receive medication refills for herself and her daughter; that individuals at the medical facility refused to draw blood, take blood pressure, or perform a physical

---

do not consider prior iterations of a complaint, but because the plaintiff proceeds *pro se*, I interpret both the original and amended complaint together as the operative complaint.").

[5] In her most recent amended complaint, Ms. Tapia names only Dr. Muhammed as a defendant. (Doc. 11). It appears that Ms. Franks is a physician's assistant, i.e., a PA. (Doc. 15, p. 4). Ms. Ahalt appears to be a nurse practitioner, i.e., an NP. (Doc. 15, p. 2).

[6] In her initial complaint, Ms. Tapia alleged that she and her daughter visited Cahaba Medical Center on October 25. (Doc. 1, p. 13). In a notice that she submitted, Ms. Tapia provided an October 21, 2020 medical record from that visit and confirmed in writing that the visit took place on October 21, 2020. (Doc. 15, p. 2). The medical record indicates that Ms. Tapia's daughter was 13 years old on October 21, 2020. (Doc. 15, p. 1).

[7] The October 21, 2020 medical record that Ms. Tapia submitted to the Court contains information that contradicts Ms. Tapia's allegation. (Doc. 15, p. 1).

exam; and that individuals at the medical facility made racist remarks about her Latin ethnicity. (Doc. 1, pp. 13-14; Doc. 6, p. 1; Doc. 9; Doc. 15, p. 2).[8]

The same day, Dr. Muhammed evaluated Ms. Tapia's daughter in the psychiatric unit of Children's Hospital. (Doc. 1, p. 5; Doc. 11, p. 5; Doc. 15, p. 5).[9] Ms. Tapia alleges that while Dr. Muhammed evaluated her daughter, two guards or police officers refused to admit her to the evaluation room. (Doc. 1, p. 5; Doc. 11, pp. 3, 5). Ms. Tapia asserts that Dr. Muhammed told DHR that Ms. Tapia was abusing her daughter, and the accusation was false. (Doc. 11, p. 6).[10]

Ms. Tapia alleges that Dr. Muhammed only scheduled an appointment for her daughter with a therapist. (Doc. 9, p. 2; Doc. 15, p. 5).[11] She asserts that Dr.

---

[8] Ms. Tapia includes in the medical records she submitted to the Court an October 27, 2020 record concerning a visit she made to Cahaba Medical Care for hip and back pain. (Doc. 15, pp. 3-4). The record does not seem to be related to the claims Ms. Tapia asserts concerning incidents on October 21, 2020.

[9] In her initial complaint, Ms. Tapia alleged that her daughter visited Children's Hospital on October 25. (Doc. 1, p. 5). Later, Ms. Tapia submitted an October 21, 2020 medical record from the Children's Hospital visit. (Doc. 15, p. 5). In her November 21, 2022 amended complaint, Ms. Tapia confirmed that the evaluation took place on October 21, 2020. (Doc. 11, p. 5). The October 21, 2020 medical record from Cahaba Medical Care states that that the nurse practitioner who saw Ms. Tapia's daughter called EMS to take Ms. Tapia's daughter to Children's Hospital for an evaluation because Ms. Tapia's daughter was "having active suicidal thoughts." (Doc. 15, p. 1).

[10] The medical records that Ms. Tapia submitted indicate that medical personnel were concerned that one of Ms. Tapia's older daughters was abusing her 13-year-old daughter. (Doc. 15, p. 1). DHR investigated allegations of abuse concerning one of Ms. Tapia's older daughters, not Ms. Tapia. (Doc. 14, p. 3).

[11] The medical records that Ms. Tapia submitted indicate that Ms. Tapia brought her daughter to see a therapist on October 28, 2020 to follow up on the October 21, 2020 depression diagnosis from Children's Hospital. (Doc. 19, p. 2). Before Ms. Tapia's daughter saw a therapist, a CRNP reviewed Ms. Tapia's daughter's symptoms and identified no physical health concerns other than

Muhammed and other individuals at Children's Hospital refused her daughter asthma treatment and tests to determine why her daughter was in pain. (Doc. 6, p. 1; Doc. 9, pp. 1-2; Doc. 11, p. 6). Later, Ms. Tapia's daughter received a diagnosis from Children's Hospital of an enlarged liver. (Doc. 9, p. 2; Doc. 11, p. 6; Doc. 19).[12]

As the magistrate judge explained, Ms. Tapia's factual allegations do not support a claim against the defendants under the United States Constitution or under a federal statute. (*See* Doc. 5, pp. 4-5; Doc. 7, pp. 1-2). Ms. Tapia has asserted claims under the Fourth and Fourteenth Amendment against parties who cannot be held liable under either amendment on the facts Ms. Tapia has presented. Generally, under 42 U.S.C. § 1983, a plaintiff may assert a claim against governmental actors for a violation of a provision of the United States Constitution. *Charles v. Johnson*, 18 F.4th 686, 693 (11th Cir. 2021) ("The Supreme Court has held that the Fourth

---

asthma. (Doc. 19, p. 2). The CRNP examined Ms. Tapia's daughter and found no indications of physical illness but described Ms. Tapia's daughter as "depressed; tearful." (Doc. 19, p. 3). The CRNP wrote that Ms. Tapia's daughter avoided eye contact and continuously wrung her hands. (Doc. 19, p. 3).

[12] Ms. Tapia alleges that in October 2020, Children's Hospital diagnosed her daughter with depression and told her daughter to eat better. (Doc. 11, p. 6). The medical records that Ms. Tapia submitted indicate that Cahaba Medical Care provided that diagnosis for Ms. Tapia's daughter, not Children's Hospital. (Doc. 15, p. 1). The medical records that Ms. Tapia submitted indicate on September 1, 2022, someone at Children's Hospital ordered an abdominal ultrasound for Ms. Tapia's daughter. (Doc. 19, p. 3). On September 21, 2022, when Ms. Tapia's daughter was 15 years old, Dr. Roslyn Morgan at Children's Hospital diagnosed Ms. Tapia's daughter with an enlarged liver. (Doc. 19, p. 1).

Amendment applies only to governmental actions[],” and “[t]he Fourteenth Amendment, by its own language, applies solely to state action.”).  Cahaba Medical Center, Children’s Hospital, and the four individual defendants are not governmental entities or actors.   Rather, the defendants are private medical facilities and individuals who work for those facilities.  Ms. Tapia acknowledges that Cahaba Medical Care is privately-owned.  (Doc. 15, p. 6).  Children’s Hospital “is a private, not-for-profit medical center . . .” https://www.childrensal.org/about-childrens (last visited January 6, 2023).[13]   Therefore, Ms. Tapia has not asserted a viable constitutional claim against the defendants.

Ms. Tapia’s attempt to state a claim under a federal statute fairs no better than her attempt to allege constitutional claims.  In her response to the magistrate judge’s show cause order, Ms. Tapia discussed Titles II and III of the ADA.  (Doc. 6).  As the magistrate judge explained, because Ms. Tapia seeks money damages, (Doc. 1, pp. 5, 13; Doc. 11, p. 4), she cannot pursue a claim against the defendants under Title III of the ADA because Title III does not provide a private right of action for damages.  *Thomas v. Murphy Oil Corp*., 777 Fed. Appx. 377, 379-80 (11th Cir. 2019) (dismissing claims under Title III of the ADA for failure to state a claim where

---

[13] *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-79 (11th Cir. 1999) (“Fed. R. Evid. 201(b) provides for taking judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. When SEC documents are relevant only to determine what statements or disclosures are actually contained therein, there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publicly filed be reasonably questioned.”).

the plaintiff sought only monetary damages).  Title II of the ADA governs state facilities, so that section of the ADA does not provide a basis for a federal claim in Ms. Tapia's lawsuit against private entities and individuals.  *Tennessee v. Lane*, 541 U.S. 509, 513 (2004) ("Title II of the Americans with Disabilities Act of 1990 [], 104 Stat. 337, 42 U.S.C. §§ 12131–12165, provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.'  § 12132.").  Therefore, Ms. Tapia has not stated a claim for relief under Title II or Title III of the ADA.

As an alternative to the ADA, Ms. Tapia asserts that the defendants violated the Emergency Medical Treatment and Labor Act or EMTALA.  (Doc. 9).  Congress enacted the EMTALA to prevent "emergency care providers [from] transferring indigent patients from one hospital to the next while the patients' emergency medical conditions worsened."  *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002).

> Under EMTALA, hospital emergency rooms are subject to two principal obligations, commonly referred to as the appropriate medical screening requirement and the stabilization requirement. *See* 42 U.S.C. § 1395dd (1994). The appropriate medical screening requirement obligates hospital emergency rooms to provide an appropriate medical screening to any individual seeking treatment in order to determine whether the individual has an emergency medical condition. *Id.* § 1395dd(a). If an emergency medical condition exists, the hospital is required to provide stabilization treatment before transferring the individual. *Id.* § 1395dd(b).

*Harry*, 291 F.3d at 770.

Ms. Tapia has not alleged a viable claim under EMTALA. She alleges that she and her 13-year-old daughter visited Cahaba Medical Care on October 21, 2020, for "our appointment," not emergency treatment. (Doc. 1, p. 13). Ms. Tapia does not allege that Cahaba Medical Care provides emergency services. The medical record that Ms. Tapia provided from the October 21, 2020 Cahaba Medical Care appointment indicates that a nurse practitioner at the medical facility examined Ms. Tapia's daughter and eventually called EMS to take Ms. Tapia's daughter to Children's Hospital because Ms. Tapia's daughter "was having active suicidal thoughts." (Doc. 15, p. 1).[14] Ms. Tapia alleges that Dr. Muhammed evaluated her daughter in the psychiatric unit of Children's Hospital, not the emergency department. (Doc. 1, p. 5). Ms. Tapia does not allege that Children's Hospital transferred her daughter to another hospital. Therefore, Ms. Tapia may not pursue a claim under EMTALA.[15]

---

[14] As noted above on page 4, Ms. Tapia alleges that her daughter was not having suicidal thoughts on October 21, 2020, but one of the medical records that Ms. Tapia filed contradicts her assertion. (Doc. 15, p. 1). In the context of motions to dismiss, a district court "generally [may] consider exhibits attached to a complaint," and, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling*, 811 F.3d at 1277. Logic dictates that this rule should apply when a district court reviews a complaint under 28 U.S.C. § 1915(e)(2)(B) to determine whether the claims in the complaint are frivolous or fail to state a claim for which relief may be granted. Therefore, to the extent information in the medical records and DHR record that Ms. Tapia filed contradict the factual allegations in her initial and amended complaints, the Court credits the medical records and the DHR record.

[15] EMTALA is not a federal medical malpractice statute. *Harry*, 291 F.3d at 770. If Ms. Tapia wishes to assert a medical malpractice claim, she must do so under state law.

Because Ms. Tapia has not stated a claim under the federal law theories that she mentions in her submissions, the Court must dismiss those claims pursuant to 28 U.S.C. § 1915(e)(2)(B).[16]

State law governs the remainder of Ms. Tapia's claims. The Court does not have an independent basis for federal jurisdiction over those claims. Federal courts are courts of limited jurisdiction, and a federal court may exercise jurisdiction over state law claims under 28 U.S.C. § 1332, the statute that governs diversity jurisdiction, when the amount in controversy exceeds $75,000, and the plaintiffs and

---

[16] The magistrate judge determined that the Court lacks subject matter jurisdiction over Ms. Tapia's federal law claims. (Doc. 7, p. 2). Generally, a plaintiff establishes federal question jurisdiction under 28 U.S.C. § 1331 by asserting claims under provisions of the United States Constitution and federal statutes. A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

> "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion. *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Exceptions to this rule exist, however, when "the plaintiff's claim 'has no plausible foundation' or 'is clearly foreclosed by a prior Supreme Court decision.'" *Id.* at 416.

*Jones v. State of Georgia*, 725 F.2d 622, 623 (11th Cir. 1984); *see also McCants v. Alabama-West Florida Conference of United Methodist Church,* 372 Fed. Appx. 39, 40 (11th Cir. 2010) (quoting the general rule from *Jones* but omitting exception). Transferring this analysis to the context of a 28 U.S.C. § 1915(e)(2)(B) review of *pro se* pleadings, the Court finds that it may exercise jurisdiction over the subject matter of Ms. Tapia's federal law claims, and the Court dismisses those federal law claims under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

defendants are citizens of different states. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005).

Here, Ms. Tapia seeks more than $75,000 in damages, but she and at least one of the defendants are citizens of Alabama. *MacGinnitie*, 420 F.3d at 1239 ("Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff."); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) ("Diversity jurisdiction requires complete diversity between named plaintiffs and defendants."). Ms. Tapia has indicated that she resides in Birmingham, Alabama, (Doc. 1, p. 1); she has not alleged that she is a citizen of a state other than Alabama. Therefore, it appears she is a citizen of Alabama.[17] Ms. Tapia has sued individuals who work in Birmingham, Alabama and presumably are citizens of Alabama.[18] Thus, the Court cannot exercise diversity jurisdiction over this matter because there is not complete diversity between Ms. Tapia and the defendants.

Under 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over Ms. Tapia's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if []

---

[17] "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine,* 411 F.3d at 1247. Individuals "are only citizens of the state in which they are domiciled, and they have only one domicile." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir. 2011).

[18] Again, Ms. Tapia has the obligation to allege facts that establish subject matter jurisdiction.

the district court has dismissed all claims over which it has original jurisdiction[.]"). The Court will dismiss those state law claims without prejudice so that Ms. Tapia may file them in state court if she wishes.  *See* 28 U.S.C. § 1367(d) for information relating to the statute of limitations for claims dismissed without prejudice pursuant to § 1367(c)(3).

Accordingly, by separate order, the Court will dismiss Ms. Tapia's federal law claims under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.  The Court will dismiss Ms. Tapia's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3) and ask the Clerk to please close this file.

**DONE** and **ORDERED** this January 17, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE